**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| MICHAEL GIAMO | : | NO.  11-620 |

**MEMORANDUM RE POST-CONVICTION PETITION**

Baylson, J.                                                    December  23, 2015

## I.      Introduction

Petitioner Michael Giamo ("Giamo"), a federal prisoner convicted in an arson scheme,

seeks to have his sentence vacated for violation of his constitutional rights under 28 U.S.C.

§2255(a). Giamo alleges that a "plea deal" was not properly communicated to him before his

indictment and that he would have accepted the plea and pled guilty had he received effective

assistance of counsel.

## II.     Procedural History

On October 6, 2011, Giamo was indicted and charged on eight counts for mail fraud

under 18 U.S.C. § 1341, arson conspiracy under 18 U.S.C. § 844(m), use of fire to commit a

felony under 18 U.S.C. § 844(h), malicious damage by fire of a building used in interstate

commerce under 18 U.S.C. § 844(i), false statement under 18 U.S.C. § 1001, obstruction of

justice under 18 U.S.C. § 1512(c)(1) and 18 U.S.C. §1512(c)(2), and aiding and abetting under

18 U.S.C. § 1505. (ECF 20).

Giamo proceeded to trial and was convicted for conspiring to burn down a building

(owned by a third party) containing an auto repair shop, operated by Giamo, in order to collect

the insurance proceeds.  Israel Kniestedt, who pled guilty in a separate proceeding, cooperated

with law enforcement authorities (making lengthy taped conversations about the crime with Giamo, before Giamo's arrest), and provided testimony at trial of Giamo's knowledge and involvement. Giamo was convicted on all eight counts on March 1, 2012. (ECF 56-62). The 18 U.S.C. § 844(h) conviction carried a mandatory consecutive sentence of ten years and the 18 U.S.C. § 844(i) conviction carried a mandatory minimum sentence of five years. Habeas Pet. at 2. (ECF 103). The uncontested guideline range for the other six counts was 78-97 months, yielding a combined mandatory and advisory sentencing range of 198-217 months for all counts. Id.

Giamo, with newly appointed counsel, Caroline Goldner Cinquanto, Esquire, for sentencing, had requested a downward departure or variance of 180 months (ECF 87) and the Government requested a guideline sentence of 217 months. (ECF 74). On November 16, 2012, the undersigned imposed a sentence of 192 months and judgement was entered on November 20, 2012. (ECF 90).

Giamo filed a timely notice of appeal on November 26, 2012.  The judgment was affirmed by the United States Court of Appeals for the Third Circuit on September 12, 2013. 536 F. App'x 238.  On October 25, 2013, Giamo requested appointment of counsel for a petition challenging his conviction. (ECF 99). This Court issued an Order on December 20, 2013, appointing Ms. Cinquanto, the same counsel who represented Giamo at sentencing, to prepare a habeas petition under 28 U.S.C. § 2255. (ECF 100).

Giamo's counsel filed a habeas petition pursuant to 28 U.S.C. § 2255 on March 20, 2014. (ECF 103). The Petition asserted Giamo's rights were violated by both of his privately-retained counsel, pretrial and at trial.  On August, 11, 2014, the Court issued an Order directing the government to file a response to the motion and limit its arguments to the "second prong of the

Strickland test" concerning whether the Petitioner was prejudiced by the alleged ineffective assistance of counsel. (ECF 104). The Government responded in opposition to Giamo's petition on September 30, 2014. (ECF 106). Giamo supplied a reply brief on October 30, 2014 along with an Affidavit. (ECF 107).

On December 19, 2014, the Court ordered an evidentiary hearing to elicit testimony of the pre-indictment "plea offer process." (ECF 108). This hearing was held on March 16 and 17, 2015. (ECF 113, 115).[1] After this evidentiary hearing, the Court issued an Order stating the principle issues for briefing.  Giamo filed a supplemental memorandum on June 19, 2015. (ECF 121).  The government filed a post-hearing brief on August 5, 2015 (ECF 124) and petitioner filed a reply on August 14, 2015 (ECF 126).

### III.    Jurisdiction and Standard of Review

This Court has jurisdiction under 28 U.S.C. §§ 1331. Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

A defendant may move to vacate, set aside, or correct his or her sentence, claiming that it "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. §2255(a). Claims of ineffective assistance of counsel are rooted in the Sixth Amendment guarantee of counsel and are proper under 28 U.S.C. § 2255. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (establishing a two-part test for ineffective assistance of counsel petitions); Hill v. Lockhart, 474 U.S. 52 (1985) (establishing that the Strickland test governs claims of ineffective assistance of counsel in the plea bargain context). The burden is on the petitioner to demonstrate ineffective assistance of counsel. United States v. Cronic, 466 U.S. 648, 658 (1984).

---

[1] References to the hearing on March 16, 2015 are designated as "Tr. One;" and the March 17, 2015 hearing is designated as "Tr. Two."

To succeed on a claim of ineffective assistance of counsel, the petitioner must demonstrate that (1) the performance of counsel was deficient, falling below an objective standard of reasonableness; and (2) counsel's deficient performance was prejudicial. United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007) (citing Strickland, 466 U.S. at 694). To establish deficient performance, a petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

If the defendant makes an insufficient showing of one prong in the analysis, the Court does not have to address the other element or address them in order. The Third Circuit has followed Strickland's suggestion that "a Court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697; see United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005) (affirming that the Court may "consider the prejudice prong before examining the performance of counsel prong"). The Court in Strickland noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." 466 U.S. at 697.

IV.     **Factual Background for the Post-Conviction Issues**

    **A.     Government Evidence at Trial**

Because of the jury verdict in favor of the government, this Court is bound to consider the evidence at trial (to the extent it is relevant) in the light most favorable to the

government.  There was no evidence presented by the defense.  The government has summarized

this evidence in its sentencing memorandum (ECF 74).  Briefly, the government proved at trial

that defendant Giamo had leased an auto repair shop in Philadelphia, found business to be

disappointing, and then developed a plan with his accomplice, Israel Kniestedt, a childhood

friend, to burn down the building so they could collect the insurance proceeds.  According to

Kniestedt's testimony at trial, after Giamo gave him detailed instructions on how to set the fire,

Giamo left for Brazil.  Kniestedt decided to have an unknown migrant worker set the fire, which

destroyed the building containing Giamo's auto repair shop.  The Philadelphia Fire Department

responded and eventually the extensive fire was extinguished.  The owner of the building did not

have insurance and suffered a significant economic loss.  An insurance company made a

payment to Giamo of over $100,000, some of which Giamo used to set up a new auto repair shop

at a new location.  The government introduced evidence to show that Giamo spent extensive

funds on personal expenses which he could afford from the insurance proceeds.  The government

also introduced extensive evidence, from Kniestedt's testimony and recorded telephone calls

which Kniestedt made with Giamo after Kniestedt started cooperating with the government,

which warranted the jury's verdict of guilty of several of the Counts of the Indictment.

> The only issue presented on appeal concerned the calculation of the sentence.

> **B.     Explanation of Terminology**

>> The briefs filed, both by Petitioner and by the government, as well as the

testimony, use the terms "proffer," "plea deal," and "plea offer" without any specific

explanation.  However, in the context of the legal issues presented in this case, the Court believes

it is necessary to have an understanding of:  (1) these terms, which are used in the usual process

leading up to a plea agreement in this district, (2) if there is a guilty plea, with a plea agreement,

between the government and a defendant, to what extent the guilty plea serves as a basis for the ultimate sentence.

Under Federal Rule of Criminal Procedure 11, guilty plea negotiations are recognized, but there are no specific requirements.  Because the overwhelming majority of federal criminal prosecutions result in guilty pleas, there are obviously frequent negotiations leading up to these pleas.  The Department of Justice publishes guidelines for its prosecutors to use in these negotiations.  Although all guilty plea agreements in this district are in writing, Rule 11 does not require a written agreement.  A defendant may also offer an "open" plea, when there is no agreement.

Plea negotiations may be initiated by either the government or defense counsel.  If the negotiations proceed to a possibility that a defendant may be willing to plead guilty, there is usually a requirement of a "proffer" by defendant, with counsel and the prosecutor present, pursuant to a "proffer letter."  The terms of the proffer letter may differ from district to district, but generally it is prepared by the prosecutor, on the prosecutor's stationery, signed by the prosecutor, and usually counter-signed by the defendant and defendant's counsel before it is effective.  The proffer letter generally provides that the defendant is going to make a verbal statement in the presence of his counsel and the prosecutor, truthfully disclosing his participation in the offense charged.  The letter may, but does not necessarily have to, include an obligation for the defendant to disclose other crimes which he committed or of which he may have knowledge.

The proffer letter also includes a provision that it is "off the record," *i.e.*, cannot be used against the defendant unless and until he pleads guilty.  The letter provides that if the defendant proffers but does not plead guilty, proceeds to trial and testifies at variance with the

proffer, the government may use statements made by the defendant during the proffer in cross-examination of the defendant. The government retains the right to determine if the defendant has satisfied the terms of the proffer letter.[2]

Thus, undertaking and agreeing to a proffer letter is a serious matter for the defendant. Although it does not require that the defendant plead guilty, the proffer process does limit the defendant's options if there is no guilty plea and the defendant goes to trial.

Assuming the proffer letter is appropriately executed, then the proffer will take place, and the defendant, usually in the company of counsel, the prosecutor, and one or more of the investigating agents, will make a verbal statement and answer questions about the defendant's knowledge of the crime about which he is accused. In some instances, the prosecutor may accept the defendant's verbal statement as being completely truthful, but often there is some back-and-forth discussion, and it is not unusual for defendants to sometimes make only partial admissions, and through additional questioning, the end result may or may not be satisfactory to the government. If the proffer has been satisfactory to the government, then the negotiations will often lead to a signed plea agreement, which is then presented to the Court when the defendant pleads guilty to one or more of the charges.

The negotiations may include discussion of what offenses will be charged. Often, of greatest importance to the defendant, is the issue of what sentence the defendant may receive.

---

[2] No definitive Supreme Court or Third Circuit case holding a defendant received ineffective counsel regarding the proffer process has been located. However, some cases and law review articles discuss proffer sessions. See *United States v. Chaparro*, 181 F. Supp. 2d 323, 326 n.2 (S.D.N.Y. 2002) ("The term "proffer session" is generally applied to those interviews in which a defendant submits to questioning by prosecutors in the hope of receiving a benefit from the Government, such as a decision to offer a defendant a cooperation agreement or a representation from the Government that a defendant qualifies for the safety valve provision of the law by having provided truthful information to the Government."); Benjamin A. Naftalis, *"Queen for a Day" Agreements and the Proper Scope of Permissible Waiver of the Federal Plea-Statement Rules*, 37 Colum. J.L. & Soc. Probs. 1, 5 (2003); Staphanos Bibas, *Incompetent Plea Bargaining and Extrajudicial Reforms*, 126 Harv. L. Rev. 150, 167 (2012) ("In a proffer, the defendant comes to the prosecutor's office to tell what he knows." ; There are several district court cases rejecting ineffective counsel claims with regard to proffers. *United States v. Jones*, 336 F.3d 245, 255 (3d Cir. 2003) (direct appeal; court rejected petitioner's claim that his trial counsel failed to engage in proffer discussions); *Morris v. United States*, 2013 WL 4012208 (D.N.J. 2013) (§ 2255, claimed that counsel was ineffective during plea negotiations for failing to be present during proffer meetings); *United States v. Pena-Gonell*, 2014 WL 4446601 (E.D. Pa. 2014) (§ 2255, claiming counsel ineffective for allowing him to make an unimmunized proffer to federal agents); *Solano v. United States*, 2015 WL 5177628, n.4 (D.N.J. 2015) (concluding that allowing proffer session was not ineffective assistance of counsel) .

However, counsel cannot promise any specific sentence.  The Rules prohibit the Court discussing a sentence with counsel prior to any actual sentencing with the exception of a plea under Rule 11(c), which was never part of this case.  Therefore, it is incumbent on both counsel for the defendant and for the government, in discussing a "plea deal" with the defendant, to advise the defendant that any discussions about the sentence are not binding on the Court.

However, in some cases, as part of the proffer process, the government may advise what sentence it will recommend.

The above discussion does not include any reference to mandatory minimums, which can only be abrogated by a defendant agreeing to "cooperate" with the government pursuant to 18 U.S.C. § 3553(e), the Sentencing Guidelines Section 5K1.1, and Court approval, and thus receive a sentence below a mandatory minimum.

In this case, because there was a mandatory minimum for the charge under Section 844(h), of ten years and under Section 844(i) of five years, defendant faced a total mandatory minimum of 15 years.  There was no discussion of the defendant "cooperating."

The term "plea offer" thus refers to the government's or defendant's negotiating position on the prosecutor's charging decision, assuming both that the defendant agrees to proffer and that the government is satisfied with the truthfulness of the proffer.  The term "plea deal" refers to the results of the actual negotiations between defendant, his counsel, and the prosecutor.  As noted above, the practice in this district is for the plea agreement to be reduced to writing.  The plea agreement is used as the basis for a guilty plea colloquy in open Court.

**C.      Facts Re Pre-Trial Discussions**

**1.      Initial Discussions**

After his arrest and initial appearance on the complaint and warrant on August 8, 2011, Giamo retained counsel, Paul V. Isicrate, Esquire, who entered his appearance on August 15, 2011. (ECF 7). Isicrate had limited federal criminal experience.  In the following weeks, Assistant U.S. Attorney Mark Dubnoff ("Dubnoff") told Isicrate that the government was prepared to indict Giamo on charges relating to 18 U.S.C. §§ 844(h) and 844(i), carrying ten-year and five-year mandatory minimum sentences respectively. Tr. One at 8-11. (ECF 117); Tr. Two at 25 (ECF 119). Because any sentence under Section 844(h) must be consecutive, the total mandatory minimum would be 15 years.

There was testimony at the evidentiary hearing about the pre-trial discussions by Isicrate, his paralegal, Simon Tache, Agent Cameron, Giamo, and Dubnoff.  The Court finds that, although Isicrate was credible, Dubnoff's testimony was the most complete and most credible; and where conflicts exist, the Court will credit Dubnoff's recollection. Tache's testimony was detailed about proffers and plea agreements, but the Court concludes that he was testifying to normal procedures and was not credible as to what actually happened with Giamo on the day in question. Agent Cameron credibly testified about one discussion with Giamo.  The Court discusses Giamo's testimony below.

Isicrate and Dubnoff both testified that they discussed a potential guilty plea. Dubnoff's plea offer to Isicrate required Giamo to agree to a "full and complete proffer" and, if satisfactory, to plead guilty to the violation of 18 U.S.C. § 844(h); the government would not charge Giamo with the 18 U.S.C. § 844(i) violation. Isicrate repeated this plea offer to Giamo "several times."  Tr. One at 14-18. Dubnoff testified he told Isicrate that this "deal" would set the statutory mandatory minimum floor at ten years, rather than the 15 years that would be imposed with the § 844(i) charge, and that the government would recommend a sentence within the

9

advisory range suggested by the United States Sentencing Guidelines. Tr. Two at 26. This potential plea offer was communicated verbally but not put in writing. Tr. One at 16.

Isicrate testified that he spoke with Giamo after his arrest about a potential plea on several occasions, with his paralegal, Simon Tache, present, Tr. One at 14-18.  Isicrate stated that he had a "basic discussion" with Giamo about the potential reduction of his sentence by dropping the charge that carried a five-year mandatory minimum. The guidelines were not discussed. Tr. One at 18-23.

### 2.      Meeting of September 28, 2011

Isicrate and Dubnoff arranged a proffer meeting for Giamo for September 28, 2011. Isicrate did not recall ever seeing a proffer letter.  Dubnoff did not recall if Giamo was presented with a letter regarding the proposed proffer session. Tr. Two at 41. Isicrate had told Giamo there would be a proffer session.  Tr. One at 20.  Adam Cameron testified that while escorting Giamo to this meeting, Giamo stated, he "[was] not saying anything" and that he was going to fire his attorney. Tr. One at 123.

At this meeting, Giamo asked to speak with Isicrate alone and was visibly "upset" with his counsel. Tr. One at 123; Pet'r Aff. ¶¶ 8-9. He immediately told Isicrate that he was obtaining other legal counsel. Pet'r Aff. ¶ 9. He "did not want to talk to the government because [he] could not give them what they wanted" because all the insurance proceeds had allegedly been spent. Tr. One at 26.

When Dubnoff and Cameron reentered the room, Isicrate informed Dubnoff that he would no longer be representing Giamo.  Tr. One at 127. Isicrate also informed Dubnoff that Giamo did "not want to partake of the offer and did not want to go through with the

offer…." Tr. One at 26; Tr. Two at 33 (corroborating Isicrate's recollection with Dubnoff's testimony).

Dubnoff then relayed the potential offer directly to Giamo upon Isicrate's permission, witnessed by Isicrate, Simon Tache, and Agent Cameron.  Tr. One at 26-33; Tr. One at 99-100. Dubnoff recalls that he explained to Giamo that they would get an indictment and that if "we go to trial and you're convicted, you're going to face a minimum sentence of 15 years imprisonment. I don't remember the exact words I used, but I made it very clear this was it." Tr. Two at 52. He stated that he "would still seek an advisory Guideline sentence, but would be willing to reduce the floor from 15 years to 10 years." Tr. Two at 26. He relayed to Giamo that Isicrate had informed him of Giamo's intent to not make a proffer and told him that he was "going to be charged with these offenses." Tr. Two at 35. Dubnoff asserted that Giamo "indicated his understanding of what I was telling him." Id.

Dubnoff reiterated that he told Giamo that he would have to "proffer," *i.e.*, "have to come clean that day, tell us everything, including…where the money was." Tr. Two at 34; id. at 37. The government suspected Giamo of still having some of the insurance proceeds and it was a condition that they would have to "know where it was" and receive it. Tr. Two at 26.

Dubnoff also relayed that that day "was his last shot" and "his last chance pre-indictment to try to avoid having that 15 year mandatory and that [they] were proposing a process where he could get the five years removed." Tr. Two at 34. He stressed that the "only way to avoid being charged with both [844(h) and 844(i)]…would be to proffer that day" and that it was the "only thing that could lead toward a plea offer." Tr. Two at 33.  The proffer was meant to "serve as a precursor to a possible plea agreement." Tr. Two at 40. Dubnoff asserted

that he "certainly wouldn't" make any agreement as to the charges without this proffer. Tr. Two

at 30. A sufficient proffer was always part of the plea negotiation. Tr. Two at 31.

Dubnoff also testified as follows as to what he told Giamo:

I expressed some frustration because I said I understand from Mr. Isicrate that
you no longer want to meet with this proffer— meet with us today. If that's
true, we'll go downstairs, we'll stop, but you're going to be charged with – –
with these offenses. And he said he understood.

Q:    That is Mr. Giamo said that he understood?

A:    Yes. Mr.— I don't recall whether I asked, do you understand and he said
yes, or whether he simply acknowledged. I don't remember whether he said,
yes, but he indicated his understanding of what I was telling him.

Q:  And did he offer to proffer which was a prerequisite to your extending the
offer that you described to him?

A:     He did not. He indicated that he wanted to be brought back downstairs,
so I left the room. Mr. Isicrate — at some point I had a conversation with Mr.
Isicrate outside the proffer room.

Q:    The same day? The same day?

A:    Yes, right outside the room, saying— you know, Mr. Isicrate shrugged
his shoulders and I don't remember any of the specific words that were said,
but that was—that was it. And then Special Agent Cameron and at least one
other agent took Mr. Giamo back downstairs.

(Tr. Two at pp. 34-35)

Additionally, Dubnoff testified that "by this time…[the government was]

pretty skeptical that Giamo was going to be truthful" and that the government would not accept a

proffer unless they were "satisfied that the defendant [was] being truthful." Tr. Two at 48 at 29.

They had a "sense of [his] attitude towards the government," and Giamo's recorded

conversations with Kniestedt indicated that he would never talk and there was "nothing the

government could do" to make him talk. Tr. Two at 48.  Dubnoff does not recall discussing with

Giamo what the Guidelines meant, the elements of the charges, or the advantages of not going to trial. Tr. Two at 51.

### 3. Giamo's Petition, Affidavit and Testimony

Giamo's affidavit filed on October 30, 2014, after he had been represented by counsel for several months and prior to the evidentiary hearing, stated he had prepared the affidavit at the request of his current counsel to explain the events that took place with his former attorneys.  He related that his wife had retained Isicrate who came to the prison to interview him, and that he told Isicrate that Kniestedt's story was a lie and that there was never any conspiracy to burn down his business. Instead, Giamo stated in the affidavit that Kniestedt and he had arranged for Kniestedt to break into the business and steal the state issued vehicle inspection stickers and that it was Kniestedt's idea, once inside the shop, to burn the surveillance system which subsequently engulfed the entire building.

Giamo's affidavit states Isicrate was not authorized to make any statements to the government.  Giamo continues that he had never been prepared by Isicrate for the meeting with the government on September 28, 2011.  Because of this, he told Isicrate that he was fired and that he did not want to talk to the government "because I could not give them what they wanted.  Every dime that I received from the insurance company was used either to repay One Source Motors' debts, or used to start my new business."

Giamo's affidavit continues that when the government reentered the room, Isicrate told the government he was not going to represent Giamo any further, and Dubnoff then related "this is the time to help yourself."  Giamo's affidavit denies that either Dubnoff or Isicrate ever told him that he could avoid being indicted by pleading to a ten year felony and avoid a 15 year mandatory minimum sentence.  Giamo's affidavit asserts that he was

ignorant of the criminal justice system and that the meeting with everyone in the room lasted two minutes.  The balance of Giamo's affidavit briefly discusses his relationship with his trial counsel which will be discussed below.

### 4)       Giamo's Testimony at Evidentiary Hearing

Giamo admitted that Isicrate advised him about a proffer but denied any conversation about dropping one charge.  Tr. One at 89.  Giamo contends that he had no understanding that the conversation that day constituted a plea offer and that Isicrate did not explain the terms, consequences, or advantages of such an offer.  He claims that Dubnoff only told him that it was "the time to help [him]self." Pet'r Aff. ¶ 10; Tr. One at 105.  Giamo maintains that he did not understand what the term "mandatory minimum" meant or the ramifications of the proposal in front of him. He understood that he would have to tell them about the insurance money, clear up Kneistedt's inconsistencies, and that doing so would "go in [his] favor." Tr. One at 108.

The Court finds that Giamo's affidavit and testimony about what happened on September 28, 2011, are not credible.  Giamo's testimony contradicted all of the other witnesses on significant details.  He claimed that he really did not have any idea of what was going on at this meeting.  However, more significantly, even on direct examination, Giamo never squarely testified that he was prepared to make a proffer that would be satisfactory to the government.  He implied that he would have been willing to discuss a burglary of the premises to be carried out by Kniestedt, but did not supply any details.  At one point, he did say he would have been willing to plead guilty to an arson scheme, but always qualified that with in doing so, he was not admitting full knowledge, but only that because he "started" a plan to burglarize, he was then legally responsible for all that happened thereafter.  Tr. One at 89-92.

14

The Court does not find this testimony credible, particularly in light of the recordings played for the jury at the trial, in which Giamo, in numerous telephone conversations with Kniestedt, clearly and unequivocally, admitted knowledge of the arson scheme and urged Kniestedt to take steps to lie or obfuscate the true facts.  At the evidentiary hearing, Giamo also denied stating that he was going to "fire" Isicrate, but did testify that he was unhappy with him. In substantial ways, Giamo's testimony was inconsistent with his own counsel's petition filed with this Court, and Giamo's own affidavit filed prior to the hearing.

Giamo testified that if he "was advised by [his] lawyer, [he] would have taken a plea."  However, when asked if he was prepared to admit, under oath, that he participated in an arson scheme, he replied that he would "plead to anything that would get [him] under 20 years." The Court deemed this nonresponsive to the question. Id. Giamo testified he "believe[d] [he] would have took a plea deal for 10 years," but did not answer that he would have pleaded guilty for a 10 year *minimum*. Tr. Two at 15 (emphasis added).  Also, Giamo never testified that he would make a proffer acceptable to the government.  At one point, he said he was prepared to admit participating in an arson scheme, but qualified that statement by referring to a ten year prison sentence.  Giamo's testimony reflects his purported belief that he could plead guilty to the arson scheme and get a ten year sentence -- that was not the government's position and of course even if the government had said that, such a statement would not be binding on the Court.  Giamo could only recall that if he told the government everything he knew, they would "go easy [on him]." Pet'r Aff. ¶ 9. (ECF 107-1).

The Court does not credit Giamo's selective recollection.  As the testimony of Dubnoff and Isicrate discloses, because the government was willing to forego indicting the defendant on Section 844(i) if he had agreed to plead guilty to Section 844(h), with

a proffer and ten year mandatory, Giamo was clearly told that he was facing a minimum sentence of that amount.  However, he professed ignorance that the ten year minimum was a mandatory minimum, so that the Court retained the right to impose a higher sentence, *i.e.*, there was no guarantee the sentence would only be ten years' imprisonment.

## V.     Parties' Contentions

Petitioner Giamo makes seven claims in his habeas petition. Habeas Pet. at 6.  The first three contentions concern alleged failure of Isicrate to communicate, explain, and advise Petitioner of a plea offer extended by the government pre-indictment. Giamo requests the Court grant his petition with respect to the plea offer issue, where Giamo would "in fact enter a guilty plea if necessary and proceed to sentencing." Pet'r Reply at 6. (ECF 107).

Giamo's remaining four contentions assert that his trial counsel did not provide effective legal representation at trial, and will be discussed below.

Giamo contends that his right to effective assistance of counsel in connection with the negotiation and communication of plea offers was violated, premised on the Supreme Court rulings of Missouri v. Frye, 132 S. Ct. 1399 (2012) and Lafler v. Cooper, 132 S. Ct. 1376 (2012). Habeas Pet. at 7. Additionally, Giamo applies this rationale to counsel's duty to advise a defendant of the consequences of an open guilty plea without a plea offer.[3] Id. Giamo alleges that the pre-indictment plea offer was not adequately communicated to him by counsel, nor were the terms and ramifications of the offer adequately explained to him. Pet'r Reply at 3. Giamo claims that he was prejudiced as a result, maintaining that he never intended to exercise his trial rights and would have taken the plea but for ineffective assistance of counsel. Pet'r Aff. ¶ 12.

---

[3] There is no case law addressing Petitioner's argument and it is directly refuted by Giamo's own repeated assertions that he would have only plead guilty in exchange for a plea agreement for a ten year sentence, ignoring that under the law the ten year mandatory minimum was only a "floor."

The Government maintains that a plea offer was extended to Giamo prior to indictment, which would have required Petitioner to plead guilty to the 18 U.S.C. § 844(h) charge carrying a ten-year mandatory minimum. Gov't Opp'n at 5. The Government contends that Dubnoff "expressly stated that the proposed offer would carry a ten-year statutory minimum sentence, and that without a plea, an indictment would include charges that carried a fifteen-year minimum sentence." Id. at 6. The Government argues that Giamo, in the presence of counsel, confirmed that he understood the plea offer and rejected it, and cannot prove that the offer was not adequately communicated or that he was prejudiced as a result. Id.

**VI.    Analysis**

    **A.    Giamo Received Ineffective Pre-Trial Assistance of Counsel**

Although the prehearing Order of the Court indicated that counsel need only address the issue of substantial prejudice under the second prong of *Strickland v. Washington*, both parties have briefed the issue of whether Giamo was deprived of effective assistance of counsel on September 28, 2011, the day of the meeting between Isicrate and the government.

To establish deficient performance, a petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The guarantee of effective assistance of counsel extends to the plea bargaining stage, whereby "[d]efense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. 1399. This duty requires counsel to advise a defendant so that they may "make a reasonably informed decision whether to accept a plea offer." United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992). The Third Circuit has further identified "potential sentencing exposure" as a factor that must be included in this plea advisory

process, requiring that counsel know the sentencing guidelines and relevant circuit precedent. United States v. Bui, 795 F.3d 363 (3d Cir. 2015). *amending* 769 F.3d 831 (3d Cir. 2014). (internal citations omitted).

Giamo was not reasonably informed about the consequences of not accepting the plea offered by the government and his sentencing exposure, and the alternative of pleading not guilty and going to trial. Giamo was not reasonably informed as to the terms, risks, and conditions of the potential plea arrangement, and thus could not make an informed decision as to whether to accept a plea offer. The Court credits the testimony of both Dubnoff and Isicrate that both of them made it clear to Giamo that any "plea deal" was contingent on a proffer. Isicrate also testified to having a "basic discussion" with Giamo about a potential reduction of his sentence by dropping the five-year charge in exchange for cooperation. The above two conditions, about a proffer and a "floor" of ten years as the minimum sentence was made clear to Giamo. However, there were many other material factors that were never explained to him.

After receiving the government's offer, Isicrate visited Giamo two times, for fifteen minutes each, at the Federal Detention Center and conveyed to Giamo the government's offer of dropping the § 844(i) charge (five-year mandatory) contingent upon Giamo giving a proffer, although he did not take any notes documenting any of these conversations. (Id. at 14-15, 87, 141). That fact was consistent throughout Isicrate's testimony – that when Isicrate counseled Giamo about the government's plea offer, the only thing he talked about was the government's offer to withdraw the charge carrying the five-year mandatory minimum in exchange for a proffer. (Id. at 14-18, 21-22).

Significantly, Isicrate also testified that *he never discussed Giamo's sentencing exposure under the Sentencing Guidelines*, including how that exposure would be different if

Giamo took the plea offer, entered an open plea, or proceeded to trial. (Id. at 17-19). He never

discussed Giamo's criminal history category under the guidelines. (Id. at 17, 22). He never

discussed Giamo's offense level under the guidelines. (Id. at 18, 22). There is no indication that

he discussed the § 3553 factors, or explained that the Sentencing Guidelines must be calculated

and considered by the sentencing judge, but are advisory. Neither did he discuss, at any time, the

weight of the evidence against Giamo, any pretrial motions he could make, the likelihood of their

success, and their impact on the evidence. (Id. 22-30) Giamo's testimony is consistent with

Isicrate's testimony on this point. (Id. at 87-88).

Very often at a proffer, there is a substantial and substantive give and take between and

among the prosecutor, defendant, defense counsel and the agents.  Defendants are often hesitant

to admit their full involvement in a particular offense, particularly a serious one carrying a

mandatory minimum sentence.  Part of the negotiation during a proffer usually consists of

"educating" the defendant on the elements of a crime, and what the law provides in the way of

responsibility for criminal conduct.  Accepted prosecution theories include conspiracy and aiding

and abetting.  All of these were relevant in Giamo's case since there is no question that Giamo

did not personally start the fire and was not present when the fire was started.  As the indictment

shows, his liability depends on the government being able to prove a conspiracy, or that Giamo

aided and abetted the arson.  None of this was ever explained to Giamo at any time on September

28, 2011 or prior to the proffer by Isicrate.

It is possible, but speculative, even though Giamo had expressed the intent to get another

lawyer, and terminated the proffer, that if Isicrate and Dubnoff, together with Agent Cameron,

had taken the time to discuss facts and concepts of legal responsibility, Gimao would have been

amenable to making a proffer.  The Court makes this observation based on what Dubnoff,

Isicrate and Agent Cameron knew at that time.  Of the three, only Isicrate had any prior

knowledge of Giamo.  Of the three, only Isicrate had prior knowledge of Giamo.  Dubnoff and

Agent Cameron had never met Giamo before.  As of September 28, 2011, Giamo was not

interested in, or prepared, to make a satisfactory proffer.  Giamo had expressed intent to get new

counsel, which undoubtedly had some impact on his not getting the benefit of a normal proffer

with the government.

 The overall circumstances of what occurred on that day warrant a conclusion that Giamo

did not have effective counsel.  The government knew from Giamo's statement to Agent

Cameron on the way over to the meeting that Giamo was unhappy with his representation by

Isicrate.  Agent Cameron testified that he repeated this to Dubnoff.  (Tr. One 123-132) Dubnoff,

himself, knew that Giamo was not happy with his representation by Isicrate because Giamo said

that directly to Dubnoff.  At the same time, Dubnoff was putting pressure on Giamo to make

decisions that day about his fate with this prosecution because of what Dubnoff relayed was a

"deadline" for presentation of the Indictment to the grand jury.  Thus Giamo was in a particularly

unfavorable position, having expressed his displeasure with his retained counsel, but being

forced to make an important decision about his future, related to this very serious case, "on the

spot."

 In response to questions from the Court, Dubnoff indicated that the thought did

cross his mind of having some delay in the planned proffer session, but he was concerned about

doing so because of an impending Speedy Trial Act delay.  Such delay may have, in the context

of Giamo being unhappy with his counsel, prevented the government from getting an extension

of the Speedy Trial Act deadline by agreement, and would have exposed the government to the

risk that a magistrate judge would not grant a unilateral request by the government.  The Court

accepts this testimony as a valid reason for Dubnoff's desire to have the proffer on that day, in telling Giamo and Isicrate that he was pushing for a "yes or no" decision on the proffer. However, these circumstances did not relieve the pressure on Giamo.  The Court believes it was incumbent on Isicrate, as still being present and still being Giamo's counsel, to try to preserve Giamo's options.  In retrospect, Dubnoff and Isicrate should have discussed an extension of the Speedy Trial Act in Giamo's presence at that time.

It is not uncommon for defendants to be unhappy with their counsel, in a criminal case, either for justifiable or strategic reasons, and to assert that they want to get new counsel – without ever doing so.  However, all confirmed Giamo's expressed displeasure with Isicrate. The record does not show Giamo had any prior experience of being accused of a serious crime, so the Court does not know whether he was ever in such a position before.  Also, even though the Court does not credit Giamo's specific testimony, he was indisputably in a difficult situation, with counsel who had not spent sufficient time giving advice to Giamo on the plea offer process. There is no showing that Giamo was without funds to retain counsel, and indeed did privately retain his next counsel, Michael Caudo, Esquire, who represented him at the trial.

Dubnoff's own testimony shows Dubnoff himself was putting pressure on Giamo to come to a decision, knowing that there was a difficult, if not fatal, relationship between Giamo and Isicrate.  Dubnoff did not advise Giamo or Isicrate the reason why he was insisting on a proffer on that day but told them he would not allow any further delay in a proffer.  Even a delay of 24 hours would have allowed Giamo to see if he could retain different counsel to review the situation with Isicrate, in the nature of getting a "second opinion."  And since Isicrate was not protecting his client, Dubnoff's pressure, although not in bad faith, was an exacerbating factor.

Among the items not discussed with Giamo which the Court believes are very relevant were the following:

1.      Discussion of the guideline range that would apply in addition to a mandatory minimum and that the sentencing judge had discretion and could "vary" up or down from the advisory Guidelines;

2.      Understanding that the proffer process was subject to the terms and conditions of a written letter, and the government's satisfaction that the proffer was truthful;

3.      A "plea deal" could still proceed with the government recommending one sentence and the defendant urging a lesser sentence as long as the mandatory minimum applied;

4.      Any ultimate sentence above the mandatory minimum was within discretion of the judge, who could not and would not participate in any plea discussion;

5.      That the judge would also have to take into account the sentencing factors under 18 U.S.C. § 3553.

6.      An overall evaluation of the risks and reward of accepting the government's plea offer as opposed to pleading not guilty and going to trial.

Though Isicrate was arguably discharged during the proffer session, he did not leave, and Giamo did not ask him to leave.  Testimony was disputed as to whether Giamo ever used the word "fire" to express his termination of representation by Isicrate, and the testimony does not show whether it was to be immediate or to take place after Giamo secured new counsel. However, the Court must view Isicrate as Giamo's lawyer on September 28, 2011, and consider, solely on what Isicrate did or did not do, as to whether Giamo was receiving effective legal representation.  The government asserts he was still the duty-bound counsel of record throughout events on September 28, 2011, and did not move to withdraw as counsel until October 4, 2011.

22

(ECF 15).  The Court rejects the government's argument, that because Isicrate did not formally

"withdraw" his appearance and leave the meeting on September 28, 2011, he was provindg

effective counsel to Giamo.  The government's arguments ignores the undisputed fact that the

attorney/client relationship was under stress, and Giamo was not receiving all the information

which effective counsel would have provided.  The record is clear that Giamo was expressing his

unhappiness with Isicrate, and whether true or feigned, Dubnoff was on notice of this, but

nonetheless continued to put pressure on Giamo to come to a decision on a very important

matter.

       Isicrate's performance fell short of the standards required by the Third Circuit.

Most importantly, Isicrate did not advise Giamo of his sentence exposure, and the ranges and

risks, were not discussed. Giamo was made aware of only some of his sentence exposure by

Dubnoff, but this is no substitute for Giamo having his own counsel with whom he had a positive

relationship, and who would advise him about sentencing and all the other relevant factors.  Tr.

Two at 26.  Dubnoff himself does not recall discussing what the Guidelines meant, the elements

of the charges, or the pros and cons of going to trial. Tr. Two at 51. Ultimately, Giamo was not

adequately advised by his counsel, so he could make an informed judgment during the potential

plea negotiation.  Isicrate, Giamo's defense lawyer, did not function as effective counsel during

the plea bargaining stage because he did not properly communicate, explain, and advise Giamo

on the terms and ramifications of the potential plea deal, or the alternatives.

       In the recent case of <u>United States v. Bui</u>, 795 F.3d 363 (3d Cir. 2015), *amending*

769 F.3d 831 (3d Cir. 2014), defendant had entered a guilty plea to a serious drug offense, and

received a mandatory minimum sentence of ten years.  The defendant petitioned that his attorney

had advised him that the "safety valve" under 18 U.S.C. § 3553(f) would apply, which would

allow the Court to a sentence him less than the ten year mandatory minimum.  After the

defendant pled guilty, the defense attorney, conducting research for a motion to present to the

Court at sentencing for the safety valve reduction, realized that the safety valve did not apply to

the offense to which defendant had pled guilty and that the Court was bound to give him the

mandatory minimum sentence.  The district judge denied the post-conviction petition on grounds

that the guilty plea colloquy sufficiently indicated to the defendant that he was subject to the ten

year mandatory minimum.  The Third Circuit vacated and remanded, holding that defense

counsel's misunderstanding of the Guidelines and the law constituted ineffective assistance.

Although the facts of <u>Bui</u> are significantly different from this case, <u>Bui</u> clearly stands for the

proposition that effective assistance of counsel extends to advice about a guilty plea, and requires

that counsel be knowledgeable on the law applicable to the charges against the client, and

correctly advise the client.

      <u>Bui</u> specifically noted that the sentencing parameters, often the most crucial part

of any plea negotiation, were not accurately presented to the defendant in that case.  This

observation strongly applies in the present case.  Applying the standards of <u>Bui</u>, it is clear that

Giamo did not receive effective assistance of counsel from Mr. Isicrate.

### B.       Ineffective Assistance of Counsel – Contentions Re Trial

      In Giamo's petition (ECF 103), he makes several contentions that Michael Caudo,

Esquire, his trial counsel, was ineffective.  Giamo's affidavit has very minimal discussion on this

point.  Paragraph 12 asserts that Mr. Caudo was hired in order to negotiate a plea agreement but

he never discussed trial strategy with Mr. Caudo.  Giamo asserts that he never discussed calling

trial witnesses with Caudo because Giamo had not intended to exercise trial rights.  Giamo says,

"I knew that I had committed a crime and wanted the case over with as soon as possible even if

that meant that I would have to plead to a crime that I didn't have any knowledge of."  In

paragraph 13, Giamo denies Caudo told him that the government would not offer him a plea for

anything less than 15 years.  Giamo concludes that Caudo was paid simply to negotiate a plea

agreement and that is the reason he put such little effort into the trial.

       It is important to note that at the evidentiary hearing, or shortly prior, Giamo and

his current counsel agreed to withdraw any claims of ineffective assistance against Caudo

relating to a plea offer and possible guilty plea.  However, Giamo's suggestion, as noted above,

that he was prepared to plead guilty to something he did not have any knowledge of, would have

been entirely unacceptable to both the government and the Court.

       In the petition itself, Giamo makes several other claims of ineffective assistance

against Caudo relating to his conduct as trial counsel, which can be summarized as follows:

       1.     That Caudo was ineffective when he failed to object and move for a

mistrial when a prosecutor made a remark in a colloquy with the Court that "I can't call the

defendant."  As the petition acknowledges, the Court immediately admonished the prosecutor

and instructed the jury to disregard the comment.  Numerous appellate cases have held that such

an instruction is sufficient to dispel any prejudice from a single, isolated comment and is not

grounds for a mistrial, and therefore trial counsel could not have been ineffective for failing to

move for a mistrial.  Also, this issue could have been raised on direct appeal.

       2.     Giamo next asserts that trial counsel was ineffective when he failed to

object to irrelevant testimony by the owner of the building that Giamo rented, which was the

target of the arson.  The owner, Mr. Ball, testified that he found Giamo was "arrogant and

difficult," but these opinions did not relate to anything directly concerning the offenses charged,

but rather to their prior relationships as landlord and tenant.  The Court disagrees that these comments were so prejudicial as to warrant a motion for a mistrial.  In addition, this is another issue that could have been, but was not, raised on direct appeal.

3.      Giamo next asserts that trial counsel was ineffective due to his failure to object to repeated instances of improper questioning by the prosecutor.  The examples given in the transcript, show testimony that might be described as marginally bordering on the irrelevant, but certainly nothing that showed a lack of due process or that it was so outrageous as to warrant a conclusion that trial counsel was ineffective.  This also could have been raised on direct appeal.

It is important to note that Mr. Caudo testified at the evidentiary hearing as to his trial strategy with Giamo, that their purpose was to attack the credibility of Kniestedt, and they wanted to stay focused on that as the primary defense, rather than object to other marginal evidence.  The Court does acknowledge that a great deal of testimony that might be considered probative, but not necessarily prejudicial to Giamo, was admitted without objection, including a good deal of hearsay.  However, the Court will credit Caudo with his testimony about his discussions about trial strategy with Giamo.  (Tr. One 59-60, 78-84).

4.      Giamo complains that trial counsel failed to investigate and develop exculpatory evidence and was therefore ineffective.  Giamo cites four instances in support of this, but the Court disagrees that they are in fact exculpatory.  To introduce evidence about these would have been collateral to the issue of Kniestedt's credibility, and therefore not included within the scope of strategy which Caudo testified he discussed with, and recommended to, Giamo.  One such example is the bankruptcy filing by Giamo, and another is a failure to interview Giamo's wife.  As the Court recalls, Giamo's wife was present during the trial and there certainly was opportunity to interview her.  Cauldo testified he did interview her but she

26

had no helpful knowledge.  The petition fails to show any admissible testimony that she would have been able to offer to refute the offenses charged and particularly the credibility of Kniestedt.

## VI.    Discussion of Prejudice

### A.    Proffer Issue

Petitioner Giamo asserts that his Sixth Amendment rights were violated as a result of Isicrate's ineffective counsel and grounds his claim under 28 U.S.C. § 2255. (ECF 103). He claims that but for ineffective counsel, he would have accepted the plea offer and plead guilty and would have received a lesser sentence as a result. Id. The Supreme Court recently addressed effective assistance of counsel during the plea bargaining stage, applying Strickland to instances where deficient performance resulted in the rejection of a plea or the expiration of an uncommunicated plea.[4] See Lafler, 132 S. Ct. 1376 at 1384–85 (holding that the Sixth Amendment guarantee covers defendants who rejected a plea offer, where a more favorable plea offer would have been accepted but for ineffective assistance of counsel); Frye, 132 S. Ct. at 1408 (holding the Sixth Amendment right to effective assistance encompasses counsel's "duty to communicate formal offers from the prosecution," where performance is deficient if an offer expires without advising or allowing the defendant to consider it).  However, this principle is subject to Strickland, and a review of the "prejudice prong."   The issue is whether Giamo can establish with reasonable probability that the plea offer would have been accepted by him and presented to the Court but for ineffective counsel. Whether a lower sentence would have resulted is a separate issue.

---

[4] The Supreme Court has recognized that "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process" that must be met to satisfy the Sixth Amendment. Missouri v. Frye, 132 S. Ct. 1399, 1407 (2012).

**B.      Petitioner Was Not Prejudiced by Ineffective Counsel Because He Cannot Establish with Reasonable Probability That the Plea Deal Would Have Been Reached**

**1.      Burden of Proof.**

Although <u>Frye</u> and <u>Lafler</u> did not specifically discuss the burden of proof, subsequent Third Circuit cases have specifically held that the defendant, in a post-conviction setting, has the burden of showing prejudice.  This is implied from the language in <u>Missouri v. Frye</u> as follows:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, **defendants must demonstrate** a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.") ("[A] defendant in Frye's position must show not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." (emphasis added)

132 S.Ct at 1409-11.

Furthermore, a recent non-precedential case citing the above language from <u>Missouri v. Frye</u> held that the defendant must demonstrate he suffered prejudice as a result of the deficient performance.  <u>D'Amico v. Balicki</u>, 592 F. App'x 76, 79-80 (3d Cir. 2014).

Giamo did not demonstrate that, but for ineffective counsel, he would have proffered, that his proffer would have been accepted, that he would have accepted the government's plea offer resulting in a plea agreement.  In the instance of a lapsed or rejected plea bargain, the petitioner must establish prejudice, showing that the "outcome of the plea process would have been different with competent advice." <u>Lafler</u>, 132 S. Ct. at 1384. The defendant must show a reasonable probability that with effective assistance: (1) the plea offer would have

28

been presented to the Court, such that the defendant would have accepted the plea and the prosecution would not have withdrawn it; (2) the Court would have accepted it; (3) and that the conviction, sentence, or both, would have been less severe than what was imposed. See Lafler, 132 S. Ct. at 1385; Frye, 132 S. Ct. at 1409.

The proposed deal would have dropped the 18 U.S.C. § 844(i) charge and removed a five year mandatory minimum from the equation. Thus, the mandatory "floor" would have been ten years, plus whatever additional sentence the Court would have given after considering the Guidelines and Section 3553 factors.

Giamo argues he would have received a lesser conviction and probably a lower sentence had a plea deal been reached. "Ineffective assistance of counsel…can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" Lafler, 132 S. Ct. at 1386 (quoting Glover v. United States, 531 U.S. 198, 203 (2001).

The parties do not dispute that the Court would have accepted a plea agreement with the terms as proposed by the government's plea offer. The proposed deal was not a finite "C plea" falling under Fed. R. Crim. P. 11(c) since it did not designate a mutually agreeable sentence that the Court could accept or reject. The proposed agreement offered a ten year mandatory minimum plus whatever additional period of incarceration the Court imposed in line with the Sentencing Guidelines, and the statutory factors, Section 3553, which provide the Court with some discretion to "vary" from the Guideline range. The fundamental question is whether there was a reasonable probability that Giamo would have made a satisfactory proffer leading to the proposed plea agreement, with its ten year floor, plus advisory sentence range.

29

Giamo has not established that his proffer would have led to the discussed plea offer, or would have resulted in a plea agreement presented to the Court. The proffer session was meant to "serve as a precursor to a possible plea agreement."  Dubnoff and Isicrate knew there would be no plea agreement without a proffer and had so advised Giamo. Tr. Two at 40; <u>id</u>. at 30. In such a case, the petitioner bears the burden to demonstrate a reasonable probability that there would "be a plea offer by the Government" before proceeding to the next steps. <u>United States v. Slane</u>, No. 14-CR-938, 2015 WL 728481, at *15 (W.D. Pa. Feb. 19, 2015).

Here, Giamo cannot establish that the plea offer by the government would have resulted in a plea agreement because he did not prove that he was willing to proffer and that his proffer would have been sufficient. The government had communicated to both Isicrate and Giamo that it would drop the 18 U.S.C. § 844(i) charge in exchange for Giamo pleading guilty to 18 U.S.C. § 844(h) and disclosing the remainder of his criminal proceeds. Gov't Opp'n at 5; Tr. One at 14. Giamo stated in his affidavit, before the hearing, that he "did not want to talk to the government because [he] could not give them what they wanted" given that all the proceeds had allegedly been spent. Pet'r Aff. ¶ 9. Dubnoff testified that they were "pretty skeptical that Giamo was going to be truthful" and believed that he still had some of the insurance money. Furthermore, as he was being escorted to the proffer session, Giamo told Special Agent Cameron that he "[was] not saying anything" and was going to fire his attorney. Tr. One at 123. The plea offer was contingent on a sufficient proffer, including full disclosure of all facts.

While Giamo did not receive effective assistance, this occurred during the "proffer" stage, which included a plea offer.  The Supreme Court has stated that "a defendant has no right to be offered a plea…" <u>Frye</u>, 132 S. Ct. at 1410 (internal citation omitted). However, neither <u>Frye</u> nor <u>Lafler</u> discuss a plea offer conditioned on a proffer.  Giamo's assertions of

deficient performance are within what Dubnoff accurately termed a "precursor stage." All witnesses at the hearing, except Giamo, agreed that the government's plea offer was contingent on a proffer, but Giamo never once testified he was prepared to make a full and complete proffer, including acknowledgement of his role in the arson.  Giamo alleges that if he was sufficiently made aware of the potential deal, he would have made a proffer sufficient to secure it. But Giamo, through his own affidavit and testimony, continues in "denial" as to what the government asserts are the true facts, as reflected by the jury's verdict.  Giamo cannot "have his cake and eat it too."  In other words, Giamo cannot claim prejudice when he has never, on September 28, 2011 or in his affidavit or at the evidentiary hearing held as part of this petition, acknowledged sufficient criminal responsibility so that the government would have accepted a proffer, and the plea offer would have become a plea agreement.

Giamo's expressed reticence to a proffer, at the time, on September 28, 2011, was reflected in his testimony at the evidentiary hearing in 2015.  At the latter hearing, Giamo, represented by new counsel, had the opportunity to testify that he would have made the acceptable proffer, but did not do so.  Giamo's testimony at the hearing was ambiguous and contradictory.  The government's skepticism that a reasonable proffer would not have been made by Giamo was reasonable.  Giamo has not established a reasonable probability that his proffer would have been sufficient, that his disclosure would have been trusted, or that the same plea offer would have been on the table after the proffer session ended.

Giamo also did not prove that the plea offer (although discussed), would have led to a plea agreement, even though he now claims that he would have taken the plea deal. "Courts should be wary of this sort of claim because defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense

fails." <u>Day</u>, 969 F.2d at 46. A petitioner's assertion that he would have accepted a plea offer must be credible, a metric that varies among circuits. There is no definitive Third Circuit precedential decision.  When there is a disparity between the sentence offered and the sentence received, the Sixth Circuit maintains that a petitioner's own credible testimony that he would have accepted a plea offer establishes a reasonable probability that he would have accepted the plea. <u>See</u>, <u>e.g.</u>, <u>Smith v. United States</u>, 348 F.3d 545, 551-52 (6th Cir. 2012). The Seventh Circuit, however, requires that a petitioner present "objective evidence" that establishes a reasonable probability that he would have accepted the plea offer. <u>See</u>, <u>e.g.</u>, <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991). The Fourth Circuit found that a petitioner's later guilty plea to a less advantageous deal lent credibility to his assertion that he would have accepted an earlier plea had it been communicated to him. <u>See</u>, <u>e.g.</u>, <u>Merzbacher v. Shearin</u>, 706 F.3d 356, 366-67 (4th Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 71 (2013).

Giamo does not meet any of these standards because he never testified that he would have plead guilty to a ten year *minimum* sentence, which was the central tenet of the plea negotiation. Despite his claims that he would have taken a plea deal, his testimony was not credible or responsive.  The closest that Giamo came to belatedly acknowledging that he would have made a proffer was in response to a question by the Court, "Were you prepared to, under oath, admit that you participated in setting the fire to this building?"  Giamo's response was "I was prepared to plead to anything that would get [me] under 20 years." This testimony was totally different from anything Giamo said in his petition, his affidavit, during the proffer session, or on direct, and the Court does not find it credible.   Tr. One at 114. It is also directly refuted by his admission of his refusal of a 15-year minimum deal offered on the eve of the trial.

Pet'r Reply at 3. The Court's impression is that Giamo will say anything that will get him a lower sentence, without regard to the true facts and his being truthful under oath.

Furthermore, there is also doubt as to whether the government would have trusted and accepted his guilty plea. Giamo's professed willingness to take a plea was predicated on a broad feeling of guilt, claiming that he would have "plead to a crime that [he] didn't have any knowledge of" to avoid trial. Pet'r Aff. ¶ 12; Tr. One at 92. Dubnoff stressed that they would not accept a proffer unless they were "satisfied that the defendant [was] being truthful" and they were "pretty skeptical" that he would be. Tr. Two at 29; id. at 48. Given his continued story that he had no knowledge of or role in the decision to burn his business, he has not established a reasonable probability that his guilty plea would have been trusted and accepted by the government, or by the Court after a colloquy.

### C. Prejudice – Trial Counsel Issues

Although the Court has reviewed above the allegations that trial counsel was ineffective, and allegedly denied Giamo his Constitutional right to effective counsel, the Court concludes that Giamo met his burden of showing that he was denied effective counsel. To some measure, but not exclusively, this conclusion rests on the evaluation of the allegations of ineffectiveness, as well as Caudo's testimony at the evidentiary hearing as to his trial strategy which he recommended to Giamo and Giamo approved. However, more fundamentally, Giamo cannot show prejudice from the lapses cited in his petition concerning Caudo . The major issue at trial was the credibility of Kniestedt who burglarized the building and directed setting the fire. Giamo's participation in the conspiracy was proven to the satisfaction of the jury. Giamo's present counsel on the petition also represented Giamo on the appeal and did not raise these issues, which also reflects the fact that Giamo received a fair trial. Indeed, as the trial judge, the

undersigned can attest to the overwhelming nature of the evidence concerning Giamo's participation.  The recorded conversations between Giamo and Kniestedt were highly incriminating, and showed Giamo's desire to obfuscate and obstruct justice, and to try to persuade Kniestedt to lie in any discussions with law enforcement.  Thus, applying the prejudice standard of Strickland and the other cases cited above, the Court concludes that Giamo was not prejudiced by any ineffective assistance by Caudo.

**VII.   Giamo Request for Relief**

Although the Court will deny relief to Giamo because he failed to show prejudice, the Court notes he claims the appropriate remedy is to allow a proffer, vacate all counts except Count III, and resentence Giamo on that Count.

"Even if a defendant shows ineffective assistance of counsel has caused the rejection of a plea leading to a trial and a more severe sentence, there is the question of what constitutes an appropriate remedy." Lafler, 132 S. Ct. at 1388-89. As the Lafler Court explained, "[t]he specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms." Id. at 1389. First, "[i]n some cases, the sole advantage a defendant would have received under the plea is a lesser sentence." Id. If the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea, "the Court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." Id.

In some situations, however, "it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory

sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice." Id. (citations omitted). "In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." Id.

Giamo's request for remedy would be rejected even if there was prejudice.  An opportunity to proffer, at this late stage, would be of no value to the government.  Giamo then asked the sentence to be vacated on all counts except Count III to which Giamo would plead guilty and receive a sentence.  What remedy would follow from a finding of prejudice is somewhat speculative.  Given Giamo's sworn affidavit and testimony, it is hard to imagine any type of credible colloquy on a guilty plea.

## VIII.   Conclusion

Petitioner Giamo has not demonstrated that he was prejudiced as a result of ineffective assistance of counsel. For the foregoing reasons, the Habeas Petition will be denied. (ECF 103).

## IX.   Certificate of Appealability

The Court will grant a certificate of appealability in this case because of the finding that Giamo was deprived of effective counsel.  There is no case law in the Supreme Court or this Circuit concerning the articulation of prejudice when there has been a finding of ineffective counsel during a proffer and guilty plea negotiation.  Nor has any other appellate decision come to light following Lafler and Cooper.  Some jurists may conclude that prejudice existed because the proffer stage was so crucial in this case.  Giamo's dissatisfaction with Isicrate, Isicrate's failing to provide effective counsel and pressure from the prosecutor, may together prove

prejudice, notwithstanding Giamo's inconsistent affidavit and non-credible testimony at the evidentiary hearing.

O:\Criminal Cases\11-620 Giamo, US v\11cr620.Memo.12.4.15.docx